UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALCOLM CLEVER,

    Plaintiff,                                    Civil Action No. 14-13473
v.                                             HON. NANCY G. EDMUNDS
                                                U.S. District Judge
                                                HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL          U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Malcolm Clever ("Plaintiff") brings this action under 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #21] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #18] be DENIED.

**PROCEDURAL HISTORY**

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on October 31, 2011 alleging disability as of September 23, 2011 (Tr. 268-269). After the initial denial

of the claim, he requested an administrative hearing, held on January 31, 2013 in Mount Pleasant, Michigan (Tr. 162). Administrative Law Judge ("ALJ") Joy Turner presided. Plaintiff, represented by attorney Aaron Lemons testified (Tr. 167-169), as did Vocational Expert ("VE") Michelle Ross (Tr. 189-194). On February 26, 2013, ALJ Turner found that Plaintiff was not disabled (Tr. 158). On July 9, 2014, the Appeals Council denied review. Plaintiff filed for judicial review of the final decision on September 8, 2014.

## BACKGROUND FACTS

Plaintiff, born May 9, 1964 was 48 when ALJ Turner issued her decision (Tr. 39, 173). He completed three years of college and obtained training as a master fabricator (Tr. 282). He worked previously as an in-home care giver, installer, and plumber's helper (Tr. 282). His application for benefits alleges disability as a result of hypertension, Chronic Obstructive Pulmonary Disease ("COPD"), Coronary Artery Disease ("CAD"), sleep apnea, a herniated disc, hip pain, neuropathy of the upper extremities, and right wrist and ankle pain (Tr. 281).

### A.     Plaintiff's Testimony

Plaintiff offered the following testimony:

He stood 6' 1" and weighed 250 pounds (Tr. 167). He was right-handed (Tr. 168). He lived in a single-family home with his wife (Tr. 168). His wife was "fully disabled" (Tr. 168). Their only source of income was her SSI payments (Tr. 168). He had not held a driver's license since it was "taken away" while living in another state (Tr. 169). He was

eligible for a Michigan driver's license, but because he did not currently own a car, he decided that obtaining a license was pointless (Tr. 169).

His studied mostly math and the sciences during his college years (Tr. 169). He was a member of the military police while in the army and was a member of the security police and a weapons specialist while in the air force (Tr. 170). He received training in fabrication and was a master fabricator (Tr. 170). He also worked as a plumber's helper, kitchen/bathroom installer, veterinary assistant, and horse groomer (Tr. 171-174). The jobs as an installer, veterinary assistant, and horse groomer required him to lift at least 100 pounds (Tr. 173-175). Between May, 2008 and September, 2011 he worked as an in-home care giver for his disabled wife (Tr. 171). He stopped working in September, 2011 due to back problems (Tr. 171). His care-giving tasks included cooking meals, making appointments, and conferring with her treating sources (Tr. 171).

At the time that Plaintiff began taking care of his wife, he was able to lift 50 pounds, but now was unable to lift more than a gallon of milk (Tr. 171-172). His current limitations were attributable to back and right arm/wrist pain (Tr. 175). On a scale of one to ten, his back pain, with medication, was currently a "five" and the wrist pain, "zero to eight," but without medication, he "would be in the hospital" (Tr. 175-176). He experienced the medication side effect of acid reflux and headaches (Tr. 176). Aside from medication, he addressed the back pain with exercise, a TENS unit, a back brace, and hot and cold therapy (Tr. 177). He also experienced sleep apnea for which he used a CPAP machine (Tr. 177).

He used a nebulizer for COPD (Tr. 178). The condition of COPD caused shortness of breath (Tr. 178). He also experienced chest pains in "high stress" situations (Tr. 178). He had recently undergone a heart catheterization (Tr. 179).

Plaintiff was unable to lift more than 12 pounds, stand for more than 20 minutes, or walk for more than two blocks without discomfort (Tr. 180). He experienced sleep disturbances (Tr. 180). He was able to care for his personal needs (Tr. 180). He was able to perform household chores and mow the lawn so long as he was able to pace himself by breaking the chores into segments (Tr. 180-181). His "hunting and fishing" activities were now limited to sitting (in a deer blind) or fishing for two hours (Tr. 182). His social activities were mostly limited to interacting with his family (Tr. 182). On a typical "good" day, he would first make sure that his wife was ready for day care, then take of his personal needs, make telephone calls, use the nebulizer, do housework, use an ice pack or TENS machine, eat lunch, take medication, do housework/exercises, make dinner, do exercises, then relax (Tr. 183). On a "bad" day, he would use a heat pack and TENS machine and "just try to deal with" his pain (Tr. 184). His need to use the "breathing machine" twice a day prevented him from working full time (Tr. 184).

In response to questioning by his attorney, Plaintiff testified that his lower back pain spread into his hip and groin area and down his legs (Tr. 185). He denied the ability to do any repetitive overhead lifting or use vibrating tools (Tr. 185). He reported that he had already undergone ulnar nerve surgery (Tr. 186). In regard to the back problems, he stated

that he had been prescribed physical therapy "to see if that works" before considering surgery (Tr. 186). He reported that epidural steroid injections did not ease his pain (Tr. 186). He testified that strong smells, dust, and chemicals aggravated his breathing problems (Tr. 187). He reported taking a 90-minute nap each day (Tr. 187). Plaintiff stated that he had been diagnosed with macular degeneration in both eyes with the left worse than the right (Tr. 187). He opined that he would be required to miss work two to three days a week due to headaches and acid reflux (Tr. 188).

    B.    **Medical Evidence**

### 1. Records Reviewed by the ALJ

February, 2010 records state that a CPAP controlled symptoms of sleep apnea (Tr. 522). April, 2010 nerve conduction studies showed right-sided CTS (Tr. 530). July, 2010 x-rays showed multiple right hand fractures (Tr. 528). Plaintiff sought treatment for back pain (Tr. 492). He also reported chronic arm pain (Tr. 493). Treating records state that he was seeing an orthopedist and had been referred for pain management (Tr. 493). In September, 2010, physiatrist Iqbal Jafri, M.D. noted Plaintiff's complaints of level "four" lower back pain radiating into both hips (Tr. 382). He noted that an April, 2010 MRI of the lumbar spine showed a disc herniation at L4-5 "without root displacement or compression" (Tr. 382). Plaintiff reported that he coped with back pain by taking Tylenol #3 (Tr. 382). Dr. Jafri noted that Plaintiff currently took care of his disabled wife (Tr. 382). Dr. Jafri observed normal ambulation and full muscle strength but a limited range of spinal motion

(Tr. 383). Dr. Jafri recommended physical therapy, steroid injections, and the use of a TENS unit (Tr. 383). October, 2010 treating notes state that Plaintiff continued to smoke despite experiencing COPD (Tr. 519). In December, 2010, Dr Jafri noted Plaintiff's report of improvement in symptoms (Tr. 384). However, in January, 2011, Plaintiff reported back pain radiating into the lower extremities (Tr. 387).

February, 2011 treating records note the need for an inhaler (Tr. 445, 453, 564). Dr. Jafri's March, 2011 treating notes make reference to an MRI showing disc herniation at L4 (Tr. 388). Dr. Jafri prescribed oxycodone for back pain (Tr. 389). Treating records from the same month show that Plaintiff required the use of an inhaler multiple times a day (Tr. 438). The following month, an epidural steroid injection was administered without complications (Tr. 390, 631). The following month, Plaintiff reported good results from the injection (Tr. 391). May, 2011, treating notes state that Plaintiff continued to smoke despite respiratory conditions (Tr. 418). Plaintiff reported chest pain due to "a lot of stress" (Tr. 421). He noted that he had recently taken a nitroglycerin tablet (Tr. 421). Treating notes state that he required the continued use of an inhaler (Tr. 435). The following month, Plaintiff declined to undergo a second steroid injection, noting not "much relief" from the first injection and that the injection had possibly "made his pain worse" (Tr. 393). Plaintiff exhibited 5/5 strength in the lower extremities but experienced pain upon lumbar extension (Tr. 393). Kevin McElroy, M.D. recommended "bilateral L2-L5 facet blocks" (Tr. 394). Treating notes state that Plaintiff was using Flonase and Spiriva on a daily basis; an inhaler every four hours

as needed; and albuterol every for to six hours as needed (Tr. 395, 546). The same month, Plaintiff report wrist pain was controlled by over-the-counter medication (Tr. 508).

July, 2011 ophthalmological records note a diagnosis of macular degeneration but no "active leakage" (Tr. 405, 409). In August, 2011, Plaintiff sought emergency treatment after a back sprain (Tr. 397). Plaintiff also reported right leg numbness and hip pain (Tr. 579). A physical examination was negative for lower limb weakness (Tr. 581). An MRI showed a bony overgrowth at L5 causing the potential for nerve root impingement (Tr. 600). The results were deemed "unchanged" from the April, 2010 study (Tr. 600). Treating records from the same month note COPD and chronic bronchitis (Tr. 442, 458, 464). A spriometry test showed mild COPD (Tr. 467, 591, 606). Notes from the following week state that Plaintiff was motivated to quit smoking and was feeling better except for the spinal condition (Tr. 473). December, 2011 treating records state that "once again, [Plaintiff's] physical exam findings" were "not consistent with complaint" (Tr. 620, 629).

A January, 2012 chest x-ray was consistent with mild COPD (Tr. 617). The following month, Plaintiff reported that hydrocodone no longer helped his back pain, and requested a referral to a pain clinic (Tr. 618). Treating notes show a good range of motion and strength in the lower extremities (Tr. 618, 627).

**2. Records Submitted After the February 26, 2013 Administrative Decision**[1]

November, 2012 treating records by Swathi Gonnalagadda, M.D. note that tip toe walking and heel walking were normal (Tr. 632). Plaintiff reported that chest pain was attributable to emotional and physical stress (Tr. 632). An MRI of the lumbar spine showed mild bulging at L4-L5 (Tr. 638). Dr. Gonnalagadda's records from the following month show that Plaintiff underwent a cardiac catherterisation (Tr. 636). February 18, 2013 examination notes by neurologist David D. Udehn, M.D. state that Plaintiff reported continued lower back pain and was ready to undergo fusion surgery if appropriate (Tr. 642).

---

[1] These records were not among those considered by the ALJ (Tr. 5). Under 42 U.S.C. § 406(g), records submitted after the administrative decision are subject to a narrow review by the reviewing court. *Cotton v. Sullivan,* 2 F.3d 692, 696 (6th Cir.1993). To establish grounds for a Sentence Six remand, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ... " § 405(g). Plaintiff does not cite the newer material, much less argue that it provides a basis for remand.

My own review of the records show that a "Sentence Six" remand is not warranted. To be sure, some of the records predate the February 26, 2013 administrative decision (Tr. 632-642). However, the evidence predating the determination would not be likely to change the ALJ's original determination that Plaintiff was capable of a limited range of light work. November, 2012 observations include a normal gait (Tr. 632). An MRI from the same month does not show worsening from the August, 2011 imaging study (Tr. 600, 638). March 8, 2013 records stating that Plaintiff would continue conservative treatment are not inconsistent with the ALJ's findings (Tr. 652).

Another set of records were submitted for Appeals Council review, documenting Plaintiff's treatment between April 9, 2013 forward (Tr. 8-138). They were properly returned by the Appeals Council because they pertained exclusively to Plaintiff's condition after the February 26, 2013 decision (Tr. 2). *See Sizemore v. Sec'y of Health & Human Servs.*, 825 F.2d 709, 712 (6th Cir. 1988)(where a claimant's condition has worsened since the administrative decision, the proper remedy is to initiate a new claim for benefits rather than seek a Sentence Six remand).

Dr. Udehn's March 8, 2013 treating records state that Plaintiff was "not yet ready to consider . . . surgery" and would instead, "optimize his TENS unit" (Tr. 652). On March 26, 2013, Dr. Udehn noted that since the previous appointment, Plaintiff's back pain required an emergency room visit (Tr. 655). Dr. Udehn observed a normal gait, station, and heel and toe walking (Tr. 656).

### C. Vocational Expert

VE Michelle Ross classified Plaintiff's past relevant work as an in-home health aide as semiskilled and exertionally medium;[2] plumber's helper and installer-assembler, semiskilled/medium (heavy as described); and work as a veterinary technician and horse trainer, skilled/medium (heavy as described) (Tr. 190). The VE found that Plaintiff did not have transferrable skills from either of the skilled positions (Tr. 190-191) The ALJ then described the following hypothetical individual to the VE, using Plaintiff's age, education, and work background:

> Assume this individual is limited to light work, that he could frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds, he could frequently balance, stoop, kneel, crouch and crawl (Tr. 191).

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

The VE testified that while all of Plaintiff's past relevant work would be eliminated, he could perform the unskilled, light work of a machine tender (7,800 positions in the State of Michigan; light assembler (14,000); line attendant (4,800); and counter clerk (14,900) (Tr. 191). The VE testified that if the same individual were additionally limited by the inability to reach overhead with the right upper extremity and required a sit/stand "at will" option, the job numbers would remain unchanged except for the counter clerk position where the numbers would be reduced from 14,900 to 7,200 (Tr. 192). The VE found that if the same individual were limited to sedentary work, he could perform the unskilled work of a ticket seller (4,800), information clerk (4,600), or bench assembler (4,900) (Tr. 193). The VE testified that if the same individual were also limited by the need to miss three or more days a month "due to impairments," all gainful employment would be precluded (Tr. 193). In response to questioning by Plaintiff's attorney, the VE testified that if the individual were further limited by the need to avoid dust or chemical smells, the machine tender job numbers would be reduced to 5,000 (Tr. 194).

### D. The ALJ's Decision

Citing the medical transcript, ALJ Turner found that although Plaintiff experienced the severe impairments of "neuropathy of the right upper extremity; right [CTS]; and degenerative disc disease of the lumbar spine," the conditions did not meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 153-154). The ALJ found that the conditions of groin, hip, and ankle pain were "not medically

determined," and that macular degeneration, COPD, and sleep apnea were non-severe (Tr. 153-154).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") for unskilled, light work with the following limitations:

> [A]bility to handle and finger is unlimited. He cannot reach overhead with his right upper extremity. The claimant has no limitation in his ability to use his left upper extremity. He must have the option to sit or stand at will. The claimant can frequently climb ramps and stairs. He can occasionally climb ladders, ropes, or scaffolds. The claimant can frequently balance, kneel, stoop, crouch, and crawl (Tr. 155).

Citing the VE's testimony, the ALJ found that Plaintiff could perform the work of a machine tender, light assembler, line attendant, or counter clerk (Tr. 157).

The ALJ discounted Plaintiff's allegations of limitation resulting from breathing problems and back pain. She noted that at the time Plaintiff applied for benefits, he did not exhibit breathing problems (Tr. 156). She acknowledged the report of Plaintiff's father that his son was easily winded but was "able to go hunting and fishing in season" (Tr. 156). She found that Plaintiff's father "was in a good position to observe the claimant's physical capacity first hand" (Tr. 156). The ALJ observed that Plaintiff was able to take care of his disabled wife "with no apparent assistance" and was able to pick her up when she fell (Tr. 156). As to the allegations of back pain, the ALJ found that Plaintiff achieved "good results" from steroid injections (Tr. 155). She found that "there was no evidence that [Plaintiff] was a surgical candidate" (Tr. 155-156). She noted that Plaintiff's received exclusively conservative treatment (Tr. 156). She cited the medical finding that Plaintiff's "pain

complaints were out of proportion with his objective and clinical tests" (Tr. 156, 620, 629).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Step Two Findings

Plaintiff faults the ALJ's Step Two finding that the condition of COPD was "non-severe." *Plaintiff's Brief,* 6-7, *Docket #18.* He contends that his respiratory problems are well-documented by the medical transcript. *Id.*

"[T]he second stage severity inquiry, properly interpreted, serves the goal of administrative efficiency by allowing the Secretary to screen out totally groundless claims." *Farris v. Secretary of HHS*, 773 F.2d 85, 89 (6th Cir.1985). An impairment can be considered "not severe ... only if the impairment is a 'slight abnormality which has such a

minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience.' " *Id.* at 90 (citing *Brady v. Heckler,* 724 F.2d 914, 920 (11th Cir.1984)). 20 CFR § 404.1521(a) defines a non-severe impairment as one that does not "significantly limit [the] physical or mental ability to do basic work activities." *See also* SSR 85-28 1985 WL 56856,*3 (1985)(same). "Basic work activities" include the physical functions "such as walking, standing, sitting." § 404.1521(b)(1).

 Plaintiff is correct that the record shows long-term treatment for the condition of COPD (Tr. 395, 418, 435, 519, 546). However, the ALJ's finding that the condition did not create work-related limitations is well supported and explained. As the ALJ noted, imaging studies (Tr. 617) and spriometry testing showed evidence of only mild COPD (Tr. 467, 591, 606). In further support of the "non-severe" finding, the ALJ noted that Plaintiff was able to walk across farmland to a deer stand in his leisure time (Tr. 154, 182). The ALJ permissibly noted that Plaintiff continued to smoke against medical advice, finding that "there was no evidence that [the breathing conditions] would persist if [Plaintiff] were to stop smoking" (Tr. 154). *See Mullins v. Secretary of Health and Human Services*, 836 F.2d 980, 985 (6th Cir. 1987)(no error in finding pulmonary condition non-severe at Step Two and omitting environmental limitations from RFC where the claimant was heavy smoker).

 Because the ALJ's finding that COPD was a non-severe condition is well articulated and supported by substantial evidence, a remand on this basis is not warranted.

### B. The Vocational Testimony

Expanding on his first argument, Plaintiff contends that hypothetical question's omission of reference to his respiratory condition and the need for environmental restrictions invalidates the VE's job findings. *Plaintiff's Brief* at 9-10.

Plaintiff is correct that a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987). While the Sixth Circuit has rejected the proposition that all of the claimant's maladies must be listed verbatim, "[t]he hypothetical question ... should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Webb v. Commissioner of Social Sec.,* 368 F.3d 629, 632 (6th Cir.2004).

Plaintiff's argument is not well taken. First, as discussed above, the ALJ found that the respiratory problems did not create work-related limitations. As such, she was not required to include them in the hypothetical question to the VE. *See Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118–119 (6th Cir.1994)(hypothetical question need not include properly discredited findings).

Second, even assuming that the ALJ erred by omitting environmental limitations from the hypothetical question forming the basis of the RFC (Tr. 155, 191-192), the omission does not provide a basis for remand. In response to questioning by Plaintiff's attorney, the VE testified that if limitations found in earlier hypothetical question (mirroring those found in

the RFC) were amended to require "a clean air environment away from dust [and] chemical smells," the hypothetical individual could perform the work of a machine tender in reduced numbers (5,000) and that the job numbers for light assembler (14,000); line attendant (4,800); and counter clerk (7,200) would remain unchanged (Tr. 192-194). Assuming that the RFC included the above environmental restrictions, the Plaintiff would be nonetheless able to perform approximately 31,000 jobs. I am unaware of any case law suggesting that a total of approximately 31,000 jobs in the regional economy does not constitute a "significant number" for purposes of a Step Five analysis. *See Born v. Secretary of Health & Human Services,* 923 F.2d 1168, 1174 (6th Cir.1990) (citing *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir.1988)) (1,350 jobs in the local economy constitute a significant number); *Martin v. Commissioner of Social Security,* 170 Fed.Appx. 369, 375, 2006 WL 509393, *5 (6th Cir. March 1, 2006) (870 jobs in the claimant's geographic region a significant number).

Finally, to the extent that Plaintiff could argue that COPD caused exertional as well as environmental limitations, the "sit/stand at will" option included in hypothetical question forming the basis of the RFC (allowing Plaintiff to sit down whenever he wishes) addresses his allegations that he was limited by shortness of breath (Tr. 155, 191-192). Because the ALJ's findings are supported by substantial evidence and sufficiently articulated, the Commissioner's decision should be upheld.

I note in closing that my recommendation should not be read to trivialize Plaintiff's personal or medical problems. Nonetheless, the ALJ's determination that he was capable

of unskilled light work as of February 26, 2013 is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Docket #21] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #18] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response

shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: March 2, 2016

                                         s/ R. Steven Whalen
                                         R. STEVEN WHALEN
                                         UNITED STATES MAGISTRATE JUDGE

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 2, 2016, electronically and/or by U.S. mail.

                                         s/Carolyn M. Ciesla
                                         Case Manager to the
                                         Honorable R. Steven Whalen